**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SUSAN SILVER, MD, RICHARD DUCOTE, ESQ., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | Civ. A. No. 18-494 Judge Nora Barry Fischer |
| COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, AND; AND THE HONORABLE KIM BERKELEY CLARK, IN HER OFFICIAL CAPACITY; | ) ) ) ) ) ) | |
| Defendants, | ) ) ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

This matter is related to an ongoing state custody case between Plaintiff Susan Silver ("Silver") and her ex-husband, Sammy Bertenthal, ("Bertenthal") and a motion for sanctions that Bertenthal filed against Silver and her counsel, Richard Ducote, Esq., which was granted, in part, by the Honorable Kim Berkley Clark, ("Judge Clark"), of the Court of Common Pleas of Allegheny County, ("Court of Common Pleas"), (collectively, "Defendants"). (*See* Docket No. 34). Prior to Judge Clark ruling on the matter, Plaintiffs sued her and the Court of Common Pleas in federal court alleging violations of their rights to freedom of speech under the First and Fourteenth Amendment and seeking declaratory and injunctive relief. (Docket No. 1). This action was initially assigned to now-Chief Judge Mark R. Hornak,[1] who conducted a hearing and oral argument on April 18, 2018, at which time an order was entered denying Plaintiffs' previously filed motions seeking a temporary restraining order and/or preliminary injunction, without

---

[1] Judge Hornak became Chief Judge of the U.S. District Court for the Western District of Pennsylvania on December 7, 2018. For consistency, the Court refers to him as Chief Judge Hornak throughout this Opinion.

prejudice, for reasons he fully described on the record, including that the Court would abstain from exercising jurisdiction over the matter under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), and that the Eleventh Amendment barred the claim. (Docket Nos. 15; 22). Presently before the Court are Plaintiffs' third motion to amend and supplement their complaint, a corresponding third motion for preliminary injunction and Defendants' opposition thereto wherein they lodge numerous defenses to the motions and the lawsuit. (Docket Nos. 32-34; 36-37; 39-40; 42-43). These matters have been fully briefed and the Court deems it appropriate to adjudicate such motions without conducting a hearing or oral argument. Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). After careful consideration of the parties' positions and for the following reasons, Plaintiffs' motions [32] [33] are denied and their Complaint [1] is dismissed, with prejudice.

## II.    RELEVANT BACKGROUND

Silver and Bertenthal have been engaged in contentious divorce and custody proceedings in the Court of Common Pleas since at least 2015 that have involved multiple appeals. (*See generally, Bertenthal v. Silver*, FD-15-008183 (C.P. Allghy 2015); Docket Nos. 1; 32-2). The custody dispute was largely resolved in favor of Bertenthal and affirmed on appeal. (*Id*.). In February of this year, while one of the appeals was pending before the Supreme Court of Pennsylvania, Ducote issued a press release and then conducted a press conference (in which Silver participated) and at which time he disseminated certain facts pertaining to the custody battle favoring Silver's position and criticized rulings by the state court awarding custody to Bertenthal. (Docket No. 1 at ¶ 12, n.1). These communications led to the publication of articles in the Pittsburgh City Paper on February 28, 2018 in both its print and online editions. (*Id*. at ¶ 13). Ducote also posted the press conference on youtube.com and the press release and various

attachments to dropbox.com. (*Id*. at n.2; 32-2 at Pl. Ex. H). Ducote further joined an online discussion in the comments section to the City Paper's online article. (*Id*. at n.3; Pl. Ex. B).

Bertenthal's state counsel, Elizabeth Pride, Esquire, prepared a motion alleging that Silver and Ducote should be sanctioned for allegedly violating Rule 8.4(d) of the Pennsylvania Rules of Professional Conduct and 42 Pa.C.S. § 2503 for engaging in conduct which was "patently and outrageously arbitrary, vexatious and obdurate." (*Id*. at ¶ 14, n.6; Pl. Ex. D). Among other things, Bertenthal cited the litigation history of the case; outlined admonitions issued to Ducote by other courts; pointed to the extrajudicial communications by Ducote and Silver in February of 2018; and argued that such communications were defamatory, contained misrepresentations, and violated the privacy of the child. (Pl. Ex. D). Bertenthal sought financial sanctions, an order directing Silver and Ducote to remove information they had posted on the Internet about the case and an order restraining Silver and Ducote from making further extrajudicial communications regarding the case. (*Id*.). Pride emailed her motion to Judge Clark, copying Ducote, on March 22, 2018, advising that she intended to present it to Judge Clark at motions court before her on March 29, 2018. (Docket No. 1 at ¶¶ 14-15). Judge Clark responded to the email, again copying Ducote, and stated that she would not be holding motions court on that date as she was unavailable. (*Id*. at ¶ 18; Pl. Ex. G). Pride then requested an alternate time to present the motion in court to which Judge Clark responded if the matter was an emergency that it could be presented to Judge Hans-Greco on March 29, 2018, who was handling motions court on that day or that she could present it to Judge Clark when she was available on April 19, 2018. (*Id*.).

With the assistance of Ducote, Silver responded to these communications by removing the motion for sanctions – which had not even been filed in state court – to federal court. In the Notice of Removal, Silver admitted that Bertenthal had "initiated" his motion for sanctions in the Court

of Common Pleas of Allegheny County and that the motion "is pending in the Court of Common Pleas of Allegheny County." (Civ. A. No. 18-393, Docket No. 1 at ¶ 2). Ducote also stated that he was appearing as Silver's counsel and "*in proper person*" or also as a *pro se* party representing his own interests. (*Id*. at ¶ 1). This Court promptly remanded the matter to the Court of Common Pleas sua sponte, finding the removal to be both procedurally and substantively defective. *See Bertenthal v. Silver*, Civ. A. No. 18-393, Docket No. 3 (W.D. Pa. Mar. 27, 2018). Among other things, this Court noted that it was procedurally improper to remove only a motion from a state case and that a well-pleaded federal defense under the First Amendment could not serve as the basis for a removal of a state cause of action to federal court.[2] (*Id.*).

Undeterred, Silver and Ducote filed this lawsuit seeking injunctive relief against the Court of Common Pleas and Judge Clark on April 17, 2018, along with contemporaneously filed motions seeking a temporary restraining order and/or preliminary injunction. (Docket No. 1). As noted, Chief Judge Hornak convened proceedings on April 18, 2018, at which time Plaintiffs' motions were denied, without prejudice, citing several reasons on the record, including that Plaintiffs were not likely to succeed on the merits of their claims as the Court should abstain from hearing the claims under the doctrine of *Younger v. Harris*.[3] (Docket Nos. 15; 22). Despite all of this federal litigation, the motion for sanctions was not actually presented to Judge Clark and filed with the Court of Common Pleas until April 19, 2018, at which time the motion was taken under advisement until a hearing and argument could be held on April 27, 2018. (Docket No. 32-2 at ¶ 16). Judge Clark also ordered the following:

> It is further ORDERED that while the ruling on the Motion
> is pending, Plaintiff, Plaintiff's Counsel, Defendant or Defendant's

---

[2]     This Court did not comment on the fact that the motion had not been filed in the Court of Common Pleas and was only emailed to Judge Clark and opposing counsel because that fact was not revealed in the Notice of Removal.

[3]     After the hearing, the matter was reassigned to this Court as related to the removal case. *See Bertenthal v. Silver*, Civ. A. No. 18-393, Docket No. 3 (W.D. Pa. Mar. 27, 2018).

> Counsel shall NOT publicly speak or communicate about this case including, but not limited to, print and broadcast media, on-line or web-based communication, or inviting the public to view existing on-line or web-based publications. All existing publications about the case shall remain in place to enable the Court to review the publications.
>
> This Order does not prohibit any party or counsel from publicly speaking or expressing an opinion about the Judge, including disclosing the entry of this Order of Court.

(*Id.*).

Apparently unsatisfied with the Orders issued by Chief Judge Hornak and Judge Clark, Plaintiffs filed their Ex Parte Motion to Amend and Supplement Complaint, and their Supplemental Application for a Preliminary Injunction on April 20, 2018. (Docket Nos. 17; 18). Plaintiffs sought to amend their complaint to add Bertenthal as a defendant and to supplement their allegations to include the latest activities in the state court proceeding, including Judge Clark's interim order. (*Id.*). This Court issued an Order on April 23, 2018 denying such motions, without prejudice, holding that Plaintiff had failed to state a plausible claim under § 1983 against Bertenthal, who is not a state actor potentially subject to liability and finding the supplemental application to be procedurally defective. (Docket No. 23).

The parties returned to state court and continued litigating the motion for sanctions at another hearing before Judge Clark on April 27, 2018. Plaintiffs admit that they raised their First and Fourteenth Amendment defenses in opposition to Bertenthal's motion for sanctions in a written brief and during the hearings. (Docket No. 34 at 4). Ultimately, Judge Clark rejected Plaintiffs' defense to the motion relying upon these constitutional provisions and entered the following Order:

> It is hereby ORDERED that […] Susan Silver; Richard Ducote, Esquire; and Victoria McIntyre, Esquire shall NOT speak publicly or communicate about this case including, but not limited to, print and broadcast media, on-line or web-based

communications, or inviting the public to view existing on-line or webbased publications. The following is also ORDERED.

1. [...] Susan Silver; Richard Ducote, Esquire; and Victoria McIntyre shall NOT direct or encourage third parties to speak publicly or communicate about this case including, but not limited to, print and broadcast media, on-line or web-based communications, or inviting the public to view existing on-line or web-based publications.

2. [...] Susan Silver; Richard Ducote, Esquire; and Victoria McIntyre may provide public testimony in the State House and/or Senate and in the United States Congress and Senate about parental alienation, sexual abuse of children in general or as it relates to this case. However, in providing such testimony, they shall NOT disclose any information that would identify or tend to identify the Child. [Silver] shall NOT publically [sic] state her name, the name of the Child, or [Bertenthal's] name. Attorney Ducote and Attorney McIntyre shall NOT publically [sic] refer to [Silver], the Child, or [Bertenthal] by name or in any manner that would tend to identify the aforementioned parties.

3. [Silver] and Counsel shall remove information about this case, which has been publically [sic] posted by [Silver] or Counsel, included but not limited to, the press release, the press conference on the YouTube site, the Drop Box and its contents, and other online information accessible to the public, within twenty-four (24) hours. [Silver] and Counsel shall download or place the aforementioned information onto a thumb drive, which shall be filed with this court.

…

This Order does not prohibit any party or counsel from publicly speaking or expressing an opinion about the Judge, including disclosing the entry of this Order of Court ***after*** the information has been removed as set forth, above. However, such expression shall NOT contain the name of the Child or other information, which would tend to identify the Child.

(Docket No. 32-2 at ¶ 20; Pl. Ex. G). In the Findings of Fact contemporaneously filed with this

Order, Judge Clark noted the following:

> 16. There is no case law directly on point with respect to the imposition of a "gag" order in a custody case. The majority of the cases dealing with the restriction of speech in connection with a court case are criminal and civil cases, where the focus is upon tainting the jury or the prospective jury pool. In this case, there is no jury to taint.
>
> 17. However, while I strongly support the notion of openness of courts and the right to free speech under the Constitution, I also recognize the harm that thoughtless, vexatious, and vengeful speech can cause a young child caught in the middle of a high-conflict custody battle. I also find that the conduct of Mr. Ducote borders on professional misconduct.
>
> 18. In this case, I find that the right of the young child caught in the middle of a high-conflict custody battle to live free from undue scrutiny, ridicule, or scorn, outweighs the rights of [Silver] and her attorney to engage in thoughtless, toxic, misleading, and vengeful discourse about this case.
>
> 19. While it is tempting to impose monetary sanctions against [Silver] and her attorney, they have not violated any order of court with regard to speaking publicly about this case, and thus, are not in contempt of this court.

(*Id.*).

Plaintiffs appealed Judge Clark's Order to the Superior Court of Pennsylvania on May 16,

2018. (Docket No. 36-1). Their Statement of Matters Complained of on Appeal states that:

> 1) The trial court legally erred and abused its discretion in granting [Bertenthal's] Motion for Other Relief in part and entering a gag order constituting a content-based restriction on speech, prohibiting […] Susan Silver, Richard Ducote, Esq. and Victoria McIntyre, Esq. from speaking publicly or communicating about this case, in violation of their rights under the First and Fourteenth Amendments to the United States Constitution and the Pennsylvania Constitution, and without any legal or factual justification in support.

(*Id*.).  Judge Clark filed an Opinion dated July 6, 2018 which addresses the notice of appeal.  *See Bertenthal v. Silver*, FD-15-008183, Document No. 329 (C.P. Allghy Jul. 6, 2018).  Relevant here, Judge Clark stated that:

> [Silver] raises one issue on appeal.  [Silver] contends that I legally erred and abused my discretion in granting [Bertenthal's] Motion for Other Relief in part and entering a gag order constituting a content-based restriction on speech, prohibiting [Silver] and her lawyers from speaking publicly or communicating about this case, in violation of their rights under the First and Fourteenth Amendments to the United States Constitution and the Pennsylvania Constitution, and without any legal or factual justification in support.  I strongly disagree.

(*Id*.).  Hence, the constitutionality of the April 27, 2018 Order is squarely before the Superior Court.[4]

This federal case remained stagnant for nearly two months until June 12, 2018, at which time Plaintiffs filed their second motion for temporary restraining order and preliminary injunction and another motion to amend or correct the complaint.  (Docket Nos. 24-26).  The Court denied these motions, without prejudice, because the filings contained numerous references to the full name of a minor child in violation of the Local Civil Rule 5.2.D.2. as well as private medical information of the child.  (Docket No. 28).  The Court also found that Plaintiffs had once again failed to conform their motions and briefs to this Court's Practices and Procedures, containing many of the same types of defects as the prior filings.  (*Id*.). Plaintiffs subsequently submitted a motion under Rule 60(b) seeking relief from that Order, (Docket Nos. 29, 30), which the Court

---

[4]     The docket report for the appeal at 754 WDA 2018 reflects that the Superior Court denied Silver's expedited application for a stay of the April 27, 2018 Order; accepted briefing from the parties on the appeal; and the matter was argued before a 3-judge panel consisting of Judge John T. Bender; Judge Jacqueline O. Shogan; and Judge Mary P. Murray on October 31, 2018.  *See Silver v. Bertenthal*, Appeal No. 754 WDA 2018 (Pa. Super. Ct. 2018).  The current status of the appeal is reported as "awaiting decision."

denied, reiterating its directives that any future filings shall comply with "this Court's Practices and Procedures, the Orders of this Court and the Local Rules." (Docket No. 31).

Plaintiffs filed their Third Ex Parte Motion to Amend and Supplement Complaint and Third Supplemental Application for a Preliminary Injunction and for Expedited Hearing on June 19, 2018. (Docket Nos. 32-34). Plaintiffs seek to amend the Complaint for the purposes of adding McIntyre, an associate attorney also representing Silver in the Court of Common Pleas, as a Plaintiff and to include additional allegations concerning events that took place since the filing of the original Complaint. (*See* Docket No. 32-2 at ¶¶ 5, 20). To this end, Plaintiffs propose to add allegations concerning Judge Clark's entry of Orders on April 19, 2018 and April 27, 2018 and the fact that Bertenthal subsequently brought a motion for contempt against Silver due to posts she allegedly made on Twitter which was also to be heard before Judge Clark.[5] (*Id*. at ¶¶ 16, 20, 22; Pl. Ex. I). Plaintiffs' proposed amended complaint once again seeks only declaratory and injunctive relief against Judge Clark and the Court of Common Pleas, alleging violations of their First and Fourteenth Amendment rights. (Docket No. 32-2 at 10-11). Among the attachments, Plaintiffs have included numerous materials from the record in the state court action. (Pl. Ex. A-I). In their Prayer for Relief, Plaintiffs request all of the following:

> a. A declaratory judgment that the April 27, 2018, Order of Court, attached hereto as Ex. G, is unconstitutional under the United States Constitution; and

> b. A declaratory judgment that the First and Fourteenth Amendments protect Plaintiffs' right to speak publicly about this case, and, specifically, to engage in the conduct prohibited by the April 27, 2018, Order; and

> c. Preliminary and permanent injunctions, without the requirement of security, enjoining Defendant Court of Common

---

[5] The Court takes judicial notice of the Order of Court issued by Judge Clark dated July 11, 2018 dismissing the Petition for Contempt and vacating the corresponding rule to show cause. *See Bertenthal v. Silver*, FD 15-008183-010, Document No. 335 (C.P. Allghy Jul. 11, 2018).

Pleas of Allegheny County and Defendant the Hon. Kim Berkeley Clark from enforcing the April 27, 2018, Order; and

  d. Preliminary and permanent injunctions, without the requirement of security, enjoining Defendant Court of Common Pleas of Allegheny County and Defendant the Hon. Kim Berkeley Clark from entering any order additionally financially punishing, enjoining, restricting, or amounting to a prior restraint on Plaintiffs' constitutionally protected rights to free speech or punishment for its past use; specifically, including but not limited to enjoining that relief set forth in the proposed "Order of Court" attached [to Bertenthal's Petition for Contempt] as Page 9 to Ex. I; and

  e. Such other relief as this Honorable Court may deem just and deserving.

(Docket No. 32-2 at 10-11).

  Defendants filed their briefs in opposition to Plaintiffs' motions on July 10, 2018. (Docket Nos. 36; 37). Although they have yet to affirmatively move to dismiss under Rule 12, Defendants raise numerous defenses to this action in their papers, including challenging subject matter jurisdiction under the *Rooker-Feldman* doctrine; asking that the Court abstain under *Younger v. Harris*; and asserting several immunities from suit. (*Id.*). All told, Defendants maintain that Plaintiffs are unlikely to succeed on the merits of their claims as this Court lacks subject matter jurisdiction over the action and/or Plaintiffs have failed to state plausible claims for relief against them and that the proposed amendments to the complaint are futile for the same reasons. (*Id.*).

  On July 24, 2018, Plaintiffs submitted reply briefs addressing those defenses, advocating that their amendment should be permitted and that a preliminary injunction should issue. (Docket Nos. 39; 40). The Court directed Defendants to file sur-reply briefs which they did on August 6, 2018, providing further counter-argument on the points raised in the replies. (Docket Nos. 42; 43). No further briefing arrived. However, as noted, this Court has monitored the status of the appeal to the Superior Court but that matter remains unresolved at this time. *See Silver v. Bertenthal*,

Appeal No. 754 WDA 2018 (Pa. Super. Ct. 2018).  Since it is unclear when the Superior Court may rule on the appeal, the Court will now proceed to address Plaintiffs' motions.

III.    RELEVANT LEGAL STANDARDS

Plaintiffs' motions for a preliminary injunction and to amend their complaint seek relief under Rules 65 and 15 and the defenses raised challenging subject matter jurisdiction and the plausibility of Plaintiffs' claims also implicate Rules 12(b)(1) and 12(b)(6).  (Docket Nos. 32-34; 36-37).  The relevant legal standards governing same follow.

A.    *Preliminary Injunction*

The grant or denial of a preliminary injunction is within the sound discretion of the Court. *See American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012).  The primary purpose of preliminary injunctive relief "is maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle County*, 40 F.3d 645, 647 (3d Cir. 1994). "Status quo" refers to "the last, peaceable, noncontested status of the parties." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).  The decision to issue a preliminary injunction is governed by a four-factor test, wherein Plaintiffs must demonstrate:

> "(1) that [they are] reasonably likely to prevail eventually in the litigation and (2) that [they are] likely to suffer irreparable injury without relief. If these two threshold showings are made the District Court then considers, to the extent relevant, (3) whether an injunction would harm the [defendants] more than denying relief would harm the plaintiff[s] and (4) whether granting relief would serve the public interest."

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013) (quoting *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002)).

The United States Court of Appeals for the Third Circuit has held that Rule 65 of the Federal Rules of Civil Procedure "does not make a hearing a prerequisite for ruling on a

preliminary injunction." *Bradley v. Pittsburgh Bd. of Education*, 910 F.2d 1172, 1176 (3d Cir.1990). A district court may rule on a motion for a preliminary injunction without conducting an evidentiary hearing. *Id.* An evidentiary hearing is not necessary when "based on affidavits and other documentary evidence if the facts are undisputed and the relevant factual issues are resolved" or if "the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Bradley*, 910 F.2d at 1178. If the moving parties are "unable to establish a prima facie case demonstrating a reasonable likelihood of success on the merits of [their claims], [they are] not entitled to a hearing on [their] motion for a preliminary injunction." *Tegg Corp. v. Beckstrom Elec. Co.*, Civ. A. No. 08-435, 2008 WL 2682602, at *11 (W.D. Pa. July 1, 2008).

### B.  Leave to Amend

Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "[M]otions to amend pleadings should be liberally granted." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citations omitted). Indeed, "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 200 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Id.* (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)). "Given the liberal standard under Rule 15(a), 'the burden is on the party opposing the amendment to show prejudice, bad faith, undue delay, or futility.'" *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 122 (W.D. Pa. 2010) (citing *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 700 (E.D. Pa. 2007)). "Leave to amend may be denied for futility if 'the complaint, as amended, would fail to state a claim upon

which relief could be granted.'" *Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 841 (3d Cir. 2014) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) and citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). Similarly, leave to amend may be denied "where a federal court would lack subject matter jurisdiction over the amended complaint." *Id.* (citing *Miklavic v. USAir Inc.*, 21 F.3d 551, 557–58 (3d Cir.1994)). The test under Rule 15(a) "is in the disjunctive, meaning that if [Defendants] meet[ ] [their] burden to prove any one of these elements, the [amendment] should not be permitted." *Id.*

### C. Lack of Subject Matter Jurisdiction/Failure to State a Claim

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a Court's subject-matter jurisdiction over the plaintiff's claims. Fed. R. Civ. P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Judkins v. HT Window Fashions Corp.*, 514 F.Supp.2d 753, 759 (W.D. Pa. 2007) (quoting *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). As the parties asserting jurisdiction, the Plaintiffs bear the burden of showing that their claims are properly before the Court. *Dev. Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995). In reviewing a Rule 12(b)(1) motion, a court must determine whether the attack on its jurisdiction is a facial attack or a factual attack. A facial attack challenges the sufficiency of the Plaintiffs' pleadings. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006). When considering a facial attack, a court must accept the allegations contained in the plaintiff's complaint as true. *Id.* A factual attack on the court's jurisdiction must be treated differently. *Id.* When considering a factual attack, the court does not attach a presumption of truthfulness to Plaintiffs' allegations, and the existence of disputed material facts does not preclude the court from deciding for itself the jurisdictional issues raised in the motion to dismiss. *Mortensen*, 549 F.2d at 891.

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). To survive a Rule 12(b)(6) challenge, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)). "Thus, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Although the Court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the plaintiff must plead facts which permit the court to make a reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556–57.

Consistent with these principles, the Third Circuit Court of Appeals has prescribed a three-step analysis for purposes of determining whether a claim is plausible. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Second, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Third,

the Court should assume the veracity of all well-pled factual allegations and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). This third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

IV.    DISCUSSION

At the outset, as there are no extraordinary circumstances here, this Court deems Chief Judge Hornak's decision denying Plaintiffs' initial motion for a temporary restraining order and/or a preliminary injunction as the law of the case and his rulings that Plaintiffs are not likely to success on the merits of their First and Fourteenth Amendment claims set forth in their original Complaint continue to apply. *See Zimmerman v. Corbett*, 738 F. App'x 87, 87-88 (3d Cir. 2018 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816-17, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), *which quoted Arizona v. California*, 460 U.S. 605, 618 n.8, 103 S.Ct. 1382, 75 L.Ed.2d 318) ("Under the law of the case doctrine, 'that decision should continue to govern' unless there are 'extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.'")). Hence, the Court focuses on whether Plaintiffs' supplemental allegations and the specific declaratory and injunctive relief sought in their proposed third amended complaint support the issuance of a preliminary injunction and whether the defenses raised by Defendants preclude the entry of same and the amendment of the lawsuit. Having carefully considered the parties' positions, the Court finds that many of the defenses asserted by Defendants are meritorious such that Plaintiffs' motions are denied and thus dismisses their original Complaint, with prejudice.

A.  *Rooker-Feldman Doctrine*

The Court turns initially to Defendants' argument that the Court lacks subject matter jurisdiction over the proposed third amended complaint because the relief requested therein is barred by the *Rooker-Feldman* doctrine. (Docket Nos. 36-37). Plaintiffs counter that the doctrine does not apply for three primary reasons: first, neither Ducote nor McIntyre were parties to the state court proceedings; second, the April 27, 2018 Order they seek relief from was not issued at the time this lawsuit was filed; and, third, the April 27, 2018 Order did not specifically analyze their defenses under the First and Fourteenth Amendments. (Docket Nos. 39-40). In this Court's estimation, the proposed amendments and supplements to Plaintiffs' complaint are futile because they are attempting to assert an impermissible direct challenge to and/or appeal of the April 27, 2018 Order entered by Judge Clark over which this Court lacks subject matter jurisdiction. *See Hayden*, 586 F. App'x at 841.

The prevailing principle of the *Rooker-Feldman* doctrine is that "federal courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). Application of the doctrine is restricted to "cases brought by state-court losers complaining of injuries caused by state-court judgments ... and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). In order for the doctrine to apply, it must be shown that: (1) the federal plaintiff lost in state court; (2) the plaintiff is complaining of injuries caused by the state-court judgment; (3) the judgment was rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. *Great W. Mining*, 615 F.3d at 166 (internal quotation marks omitted) (quoting *Exxon Mobil*, 544 U.S. at 284). "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Id*. at 166.

Applied to the proposed third amended complaint, this Court holds that the "key" second and fourth elements of the *Rooker-Feldman* doctrine are plainly satisfied. *Id*. To this end, the primary allegations of Plaintiffs' proposed third amended complaint are that the April 27, 2018 Order is an unconstitutional gag order which serves as an impermissible prior restraint on the rights of Silver, Ducote and McIntyre to freedom of speech protected by the First and Fourteenth Amendments. (Docket No. 32-2 at ¶¶ 19-21; 23-28; 10-11). In fact, as is more fully discussed below, Plaintiffs admit that the source of their alleged injuries is the April 27, 2018 Order which they believe restrains their speech. They also concede that they had not yet sustained any injuries when they initiated these federal proceedings before Judge Clark ruled. (*See* Docket No. 39 at 9 ("the April 27, 2018, unconstitutional gag order was not yet issued by the Court of Common Pleas when Plaintiffs sought federal relief; […] Thus, there had not yet been any injuries issued (sic) by state court judgments")). Further, Plaintiffs are clearly inviting the Court to review and reject the state court judgment as the relief they seek includes: declaring the April 27, 2018 Order unconstitutional; declaring that the conduct prohibited by the April 27, 2018 Order is constitutionally protected; enjoining the enforcement of the April 27, 2018 Order; and enjoining the imposition of any further sanctions as a result of the April 27, 2018 Order, such as a contempt proceeding initiated by Bertenthal against Silver. (Docket No. 32-2 at 10-11). In short, these claims for relief are "inextricably intertwined" with the sanctions proceedings and the state court's April 27, 2018 Order and ask for "exactly the type of determination that the *Rooker-Feldman* doctrine prohibits." *Van Tassel v. Lawrence County Domestic Relations Sections, et al.*, 390 F. App'x 201, 203 (3d Cir. 2010) (citations omitted).

Plaintiffs contend that *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996) counsels that the *Rooker-Feldman* doctrine cannot be applied because neither

Ducote nor McIntyre were parties to the state custody proceedings and their claims were not adjudicated in that case. (*See* Docket No. 39). But, this Court believes that *FOCUS* is distinguishable for several reasons. As a factual matter, both Silver and her lawyers (Ducote and McIntyre) are effectively parties to the sanctions proceedings in state court, i.e., the lawyers were the subject of the motion for sanctions alleging violations of the Pennsylvania Rules of Professional Conduct and the relevant statute, 42 Pa.C.S. § 2503(7), which authorizes an award of attorney's fees against litigants and their counsel[6]; the lawyers appeared at multiple proceedings before Judge Clark and asserted their own defenses under the First and Fourteenth Amendment in opposition to same; Judge Clark explicitly named them in the April 27, 2018 Order and analyzed their conduct in her corresponding findings; and the appeal of that order to the Superior Court expressly seeks to overturn that decision as to Silver and her lawyers. In addition, Ducote even admitted that he was properly deemed a party to the sanctions proceedings when he sought to remove the motion to this Court "in proper person" or also as a *pro se* party representing his own interests. (*See* Civ. A. No. 18-393, Docket No. 1 at ¶ 1).

Further, FOCUS was a third party to the Baby Byron case seeking only to speak to the lawyers and parties to the case who were restrained by the gag order. *FOCUS*, 75 F.3d at 838-40. The state courts denied FOCUS' attempt to intervene in those proceedings in order to assert its own rights such that FOCUS' claims were never adjudicated in the state system. *Id*. at 840. While the Court of Appeals held that the *Rooker-Feldman* doctrine did not bar FOCUS' claims, it expressly noted that "the parties to the Baby Byron case could not bring a First Amendment case

---

[6] The Court notes that Ducote and McIntyre are clearly participants in the state court litigation and potentially subject to sanctions under Pennsylvania law. To this end, 42 Pa. C.S. § 2503(7) provides that "[a]ny participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter," 42 Pa. C.S. § 2503(7) and § 102 defines "participant" as "[l]itigants, witnesses and their counsel." 42 Pa. C.S. § 102.

in federal court challenging the gag orders." *Id.* at n.4. In stark contrast to the third party organization in FOCUS, Ducote and McIntyre have been intimately involved with the sanctions proceedings in state court and have asserted their own defenses under the First and Fourteenth Amendments throughout those proceedings. (*See e.g.*, Docket No. 34 at 4). Like Silver, they are best characterized as "state court losers" because they argued their positions to Judge Clark, who ruled against them. *Exxon*, 544 U.S. at 284; *Van Tassel*, 390 F. App'x at 203. To the extent they object, they should continue to challenge that decision on appeal to the Superior Court rather than advance their contentions in this federal action.

Plaintiffs also contest the application of the *Rooker-Feldman* doctrine on grounds that they filed this federal lawsuit prior to Judge Clark entering the April 27, 2018 Order. (Docket Nos. 39-40). While Plaintiffs are correct inasmuch as their original Complaint was filed ten days before that Order such that it may be inappropriate to rule that this entire lawsuit is barred by the *Rooker-Feldman* doctrine, they have failed to demonstrate that this Court should permit them to amend their complaint to assert a direct challenge to a subsequent order in a proposed pleading which was not submitted until more than seven weeks after the order was entered. *See Great Mining*, 615 F.3d at 166. Again, Plaintiffs admit that they had yet to sustain any injury at the time they filed their original Complaint and that pleading is subject to dismissal for reasons set forth in additional detail below. (*See* Docket No. 39 at 9). This Court's ruling is more narrow as it concludes that it lacks subject matter jurisdiction over the relief requested in the proposed third amended complaint which is effectively a new lawsuit seeking relief from subsequent harm they allegedly sustained at a later point in time. *Exxon*, 544 U.S. at 284; *Van Tassel*, 390 F. App'x at 203.

For all of these reasons, Plaintiffs' motions to amend [32] and for a preliminary injunction [33] are denied because the *Rooker-Feldman* doctrine is appropriately applied, making Plaintiffs'

19

proposed amendments and supplements to the complaint futile.[7] *See Hayden*, 586 F. App'x at 841. They have likewise failed to meet their burden to demonstrate that the issuance of a preliminary injunction is warranted. *See Bradley*, 910 F.2d at 1178.

## B. *Younger Abstention*

Moving on, Chief Judge Hornak denied the Plaintiffs' initial application for a TRO/preliminary injunction, in part, on the basis of *Younger* abstention, and declined to enjoin the proceedings on the motion for sanctions before Judge Clark or to prospectively declare Plaintiffs' rights vis-à-vis a potential gag order as they requested. (Docket Nos. 15; 22). Defendants maintain that the same principles should bar Plaintiffs' proposed amendments and supplements to their complaint and the present motion for a preliminary injunction. (Docket Nos. 36-37; 42-43). Plaintiffs respond that *Younger* is inapplicable for many of the same reasons they oppose the application of the *Rooker-Feldman* doctrine. (Docket Nos. 39-40). In this regard, they contend that there are no ongoing proceedings in state court to which the lawyers, Ducote and McIntyre, are parties; and, Judge Clark did not analyze their constitutional claims. (*Id.*). They further suggest that the case does not involve important state interests and that their First Amendment rights should trump any such interests. (*Id.*). Once again, the Court has reviewed the parties' arguments and

---

[7]     The Court notes that to the extent that the *Rooker-Feldman* doctrine does not operate to defeat this Court's subject matter jurisdiction over Plaintiffs' § 1983 claims for injunctive and declaratory relief, collateral estoppel would apply to bar the claims on the merits. *See Great Western*, 615 F.3d at 170. Collateral estoppel applies when:

> (1) the issue to be precluded […] is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted […] was a party to or in privity with a party to the earlier proceeding.

*Gage v. Provenzano*, 571 F. App'x 111, 113 (3d Cir. 2014) (quotation omitted); *Studli v. Children & Youth and Families Central Regional Office*, 346 F. App'x 804 (3d Cir. 2009) (same). Each of these factors are met as Plaintiffs or their privies were parties to the sanctions proceedings; raised their constitutional claims in defense of the motion for sanctions; a judgment was issued against their position; and, the constitutional defense was essential to the judgment.

concurs with Defendants that *Younger* abstention provides an alternative basis to deny the pending motions.

The *Younger* abstention doctrine generally provides that "federal courts [should] abstain in certain circumstances from exercising jurisdiction over a claim where resolution of that claim would interfere with an ongoing state proceeding." *Miller v. Mitchell*, 598 F.3d 139, 145–46 (3d Cir. 2010) (citing *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005)). The United States Supreme Court has held that abstention is only warranted in "exceptional" circumstances where "the prospect of undue interference with state proceedings counsels against federal relief." *Sprint Communications, Inc. v. Jacobs*, ——U.S. ——, 134 S.Ct. 584, 588, 187 L.Ed.2d 505 (2013). "These 'exceptional' circumstances arise only where the federal action interferes with one of three categories of cases: (1) 'ongoing state criminal prosecutions' (as in *Younger* itself); (2) 'certain civil enforcement proceedings'...; and (3) 'civil proceedings involving certain orders...uniquely in furtherance of the state courts' ability to perform their judicial functions' (such as state court civil contempt proceedings)." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 131–32 (3d Cir. 2014) (quoting *Sprint*, 134 S.Ct. at 588). The hallmark of each of the three categories is that the state court proceeding is either criminal or "quasi-criminal" in nature. *Sprint*, 134 S.Ct. at 593.

In this Court's estimation, this federal action is best characterized as within the third category of cases because Plaintiffs seek to enjoin enforcement of the April 27, 2018 Order and to restrain the Defendants from exercising their contempt power in the event of a violation of same. (Docket No. 32-2 at 10-11). Indeed, Plaintiffs explicitly request relief in the form of an injunction preventing Judge Clark and the Court of Common Pleas from holding Silver in contempt for posts that she made on Twitter, as Bertenthal alleged in a petition for contempt. (*Id*. at ¶ 22; 10-11; Pl.

Ex. I). Therefore, this matter is most akin to *Van Tassel v. Lawrence County, et al.*, 659 F. Supp. 2d 672 (W.D. Pa. 2009), *aff'd* 390 F. App'x 201 (3d Cir. 2010). In that case, the plaintiff was ordered to pay attorneys' fees to her former spouse pursuant to § 2503(7) due to her vexatious litigation conduct and this Court abstained under *Younger* from issuing an injunction enjoining subsequent contempt proceedings brought against her to enforce that order and later dismissed the action. *Id.*; *see also Van Tassel*, 2009 WL 2588815 (W.D. Pa. Aug. 19, 2019). Certainly, a state court's issuance and enforcement of orders governing the conduct of litigants and attorneys appearing before it in child custody matters where the best interests of the child are at issue are unquestionably actions taken "in furtherance of the state courts ability to perform their judicial functions." *ACRA Turf*, 748 F.3d at 131-32.

Since this Court is satisfied that the state court proceeding is "exceptional," it next considers the three factors promulgated by the Supreme Court in *Middlesex* to determine whether "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Hatfield v. Fitzgerald*, 2013 WL 3305492, at *2 (W.D. Pa. June 28, 2013) (quoting *Addiction Specialists*, 411 F.3d at 408). Each of these criteria are met in this case.

On the first point, the challenged order resulted from state court proceedings on a contested motion presented to Judge Clark, who accepted briefing from Plaintiffs and her counsel, held two hearings before issuing the order, the Plaintiffs' appeal of which remains pending before the Superior Court. Plaintiffs' position that the federal action was initiated before those state proceedings is undermined by their prior attempt to remove the motion for sanctions to federal court and their corresponding admission that the motion was pending in the Court of Common Pleas at that time. (*See* Civ. A. No. 18-393, Docket No. 1). In any event, "the state action need

not actually pre-date the federal action for *Younger* to apply" as long as it was commenced before substantive proceedings took place in federal court, as is the case here. *Moreno v. Penn Nat. Gaming, Inc.*, 904 F. Supp. 2d 414, 420 (M.D. Pa. 2012) (citations omitted).

The second element is also satisfied because the state proceedings involve the important state interests inherent in all child custody proceedings, i.e., the best interests of the child, as well as the ability of state judges to issue orders governing the conduct of litigants and their counsel appearing before the court and to enforce such orders through their contempt powers. *See e.g., Anthony v. Council*, 316 F.3d 412, 421-22 (3d Cir. 2003) (citations omitted) (citing *Juidice v. Vail*, 430 U.S. 327, 337, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) and *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)) (holding that state has important interest in contempt and child support proceedings); *Allen v. DeBello*, 861 F.3d 433, 442 (3d Cir. 2017) ("the best-interests-of-the-child standard statute gives state court judges broad discretion to determine a custody situation."); *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa.Super.Ct. 2004) ("The Commonwealth has a duty of paramount importance, to protect the child's best interests and welfare. To that end, it may always entertain an application for modification and adjustment of custodial rights."). With respect to the third criterion, Plaintiffs were afforded the opportunity to raise their federal claims in the state court proceedings and they did so by presenting their constitutional defenses to the motion for sanctions in the Court of Common Pleas and have appealed the adverse decision they received from Judge Clark to the Superior Court asserting the same grounds. (*See* Docket No. 36-1). Finally, Plaintiffs have not brought any claims for money damages such that abstention is appropriate rather than a stay of the case. *Cf. Hatfield*, 2013 WL 3305492, at *2 (noting that Court must stay rather dismiss claims for monetary relief that cannot be redressed in a state proceeding).

For these reasons, Plaintiffs' motions to amend [32] and for a preliminary injunction [33] are denied because, to the extent that this Court would have subject matter jurisdiction over the proposed third amended complaint, it would follow *Younger* and its progeny and abstain from deciding the claims for declaratory and injunctive relief set forth therein. *See Hayden*, 586 F. App'x at 841.

### C. *Eleventh Amendment Immunity and Other Defenses*

Defendants contend that Plaintiffs claims for injunctive and declaratory relief set forth in the proposed third amended complaint are barred by Eleventh Amendment immunity. (Docket Nos. 36-37). They further maintain that they are not appropriate parties to this § 1983 action which is otherwise precluded by the Federal Courts Improvements Act, ("FCIA") and caselaw interpreting same. (*Id*.). Plaintiffs counter that Eleventh Amendment immunity does not defeat their claims which they believe should proceed under the doctrine of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). They also argue that Judge Clark was not acting in an adjudicatory capacity when she issued the April 27, 2018 Order. (Docket Nos. 39-40). The Court finds that Defendants are correct in their analysis.

Initially, it is well established that the Court of Common Pleas is entitled to Eleventh Amendment immunity from civil lawsuits such as this § 1983 action. *See Lyman v. Philadelphia Court of Common Pleas Domestic Relations Div.*, --- F. App'x ---, Appeal No. 17-2667, 2018 WL 4566270, at *4 (3d Cir. Sept. 24, 2018) (citing *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) ("all courts in Pennsylvania's judicial districts are entitled to Eleventh Amendment immunity."). Indeed, "Congress did not specifically abrogate the states' Eleventh Amendment immunity in enacting § 1983." *Id*. (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). And, "Pennsylvania has not consented

to be sued in federal court." *Id*. (citing 1 Pa.C.S. § 2310).  Plaintiffs seek to avoid Eleventh Amendment immunity by invoking the doctrine of *Ex Parte Young* but that exception does not apply to the state and its agencies, including the Court of Common Pleas.  *Van Tassel v. Lawrence Cty. Domestic Relations Section*, 659 F. Supp. 2d 672, 695 (W.D. Pa. 2009), *aff'd sub nom. Van Tassel v. Lawrence Cty. Domestic Relations Sections*, 390 F. App'x 201 (3d Cir. 2010).

As to Judge Clark, although *Ex Parte Young* authorizes a suit for prospective injunctive or declaratory relief against a state official, the other defenses she has raised preclude the relief sought by Plaintiffs here.  *See Allen,* 861 F.3d at 442. To this end, "[s]ince the enactment of the FCIA, courts have held that an individual seeking injunctive relief against a judicial officer pertaining to a judicial act must allege that a declaratory decree was violated, or that declaratory relief was unavailable, in order to overcome the judicial immunity established by that statute." *Van Tassel*, 659 F. Supp. 2d at 698; *Lyman*, 2018 WL 4566270, at *4.  Here, injunctive relief is unavailable against Judge Clark because Plaintiffs have not alleged that she violated any declaratory decree nor that declaratory relief is unavailable.  *See id.*  Indeed, Plaintiffs expressly seek declaratory relief in their proposed third amended complaint.  (Docket No. 32-2 at 10-11).

Judge Clark also invokes the Third Circuit's decision in *Allen v. DeBello*, 861 F.3d 433, 442 (3d Cir. 2017) for the proposition that judges are not proper parties to § 1983 claims challenging actions taken in their judicial capacity.  Plaintiffs counter that Judge Clark was not performing an adjudicatory function when she issued the April 27, 2018 Order.  (Docket Nos. 39-40).  As is explained above, Plaintiffs are simply wrong on this point in that Judge Clark engaged in quintessential judicial functions when she presided over the sanctions proceedings by accepting briefing from the parties; conducting hearings; and, issuing the April 27, 2018 Order as well as her corresponding factual findings.  *Cf. Figueroa v. Blackburn*, 208 F.3d 435, 443 (3d Cir. 2000)

(quoting *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)) ("Factors which determine whether an act is a 'judicial act' 'relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectation of the parties, i.e., whether they dealt with the judge in his judicial capacity.'"). Judge Clark essentially ruled that the best interests of the child in the custody matter outweighed the First and Fourteenth Amendment rights of Silver and her lawyers to engage in what she described as "thoughtless, vexatious, and vengeful speech" about the child custody case. (Docket No. 32-2 at ¶ 20; Pl. Ex. G). Judge Clark further commented that "the conduct of Mr. Ducote borders on professional misconduct." (*Id.*). This case is therefore distinguishable from other authority relied upon by Plaintiffs where the judicial officer entered a gag order sua sponte rather than on contested motions practice. (*See* Docket No. 39-40). Therefore, Plaintiffs' position must be cast aside.

To conclude, the Court alternatively denies Plaintiffs' motions to amend and for a preliminary injunction because such amendments are futile in light of the well-taken defenses under the Eleventh Amendment, § 1983 and the FCIA.[8] *See Hayden*, 586 F. App'x at 841.

### D. Dismissal of Original Complaint

As a final matter, the Court notes that, despite the repeated denials of preliminary injunctive relief by Chief Judge Hornak and this Court, the original Complaint remains pending. (*See* Docket No. 1). However, the Court finds that the original Complaint is subject to dismissal for several reasons. Hence, the Court exercises its discretion to dismiss Plaintiffs' Complaint sua sponte as Plaintiffs have been provided more than ample opportunity to refute the applicability of the defenses raised by the Court of Common Pleas and Judge Clark. *See Rouse v. City of Pittsburgh*, Civ. A. No. 17-1454, 2018 WL 3209430, at *7 (W.D. Pa. Apr. 27, 2018), *report and*

---

[8] The Court notes that the claims are also barred by the defense of collateral estoppel. *See* n.7 *supra*.

*recommendation adopted*, No. 2:17-CV-1454-AJS, 2018 WL 2325731 (W.D. Pa. May 22, 2018) (quoting *Bethea v. Nation of Islam*, 248 Fed. Appx. 331, 333 (3d Cir. 2007) (unpublished) ("a court may sua sponte dismiss a complaint even if a court does not give notice and an opportunity to respond where it is 'clear that the plaintiff cannot prevail and that any amendment would be futile.'")).

Initially, "federal courts do not have the power to decide moot questions" and claims for injunctive relief which are deemed moot may be dismissed for lack of subject matter jurisdiction. *Prater v. City of Philadelphia Family Court*, 569 F. App'x 76, 78-79 (3d Cir. 2014) (citing *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971)). Here, the original Complaint is moot to the extent that Plaintiffs seek injunctive relief precluding Defendants from ruling in Bertenthal's favor on the sanctions motion as Judge Clark has already done so and entered the April 27, 2018 Order. (*See* Docket Nos. 1; 32-2).

In addition, many of the defenses articulated above support dismissal at this juncture. To this end, the Court of Common Pleas is entitled to Eleventh Amendment immunity from all of Plaintiffs' claims; their claims for injunctive relief against Judge Clark must be dismissed as she is not a proper defendant to a suit under § 1983 and the FCIA challenging actions taken in an adjudicatory capacity; and consistent with Chief Judge Hornak's initial ruling, this Court would abstain under *Younger* as to any remaining claims for declaratory relief. *See* §§ IV.A, IV.B, IV.C., *supra*. Insofar as these defenses do not preclude the suit, res judicata and/or collateral estoppel would bar the action as Plaintiffs raised their constitutional claims in state court and the judgment is entitled to deference, subject to review by the state appellate courts and, ultimately, the Supreme Court of the United States. *See* n.7, *supra*. Finally, it is clear to this Court that any further

amendment of Plaintiffs' Complaint would be futile such that the dismissal will be with prejudice and leave to amend will not be granted. *See Hayden*, 586 F. App'x at 841.

V.     CONCLUSION

Based on the foregoing, Plaintiffs' motions for leave to amend [32] and for a preliminary injunction [33] are DENIED and their Complaint [1] is dismissed, with prejudice.  An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Dated:  December 12, 2018

cc/ecf:  All counsel of record.